## HILL v. CITY OF BEAUMONT.     (No. 1673.)

Court of Civil Appeals of Texas.     Beaumont.
March 30, 1928.

Rehearing Denied.     April 25, 1928.

1. Pleading ⬦310—Documents filed as exhibits to petition for breach of contract became part thereof as fully as if pleaded in hæc verba.

Where contractor's petition, in action for breach of contract, did not include, by copying therein, the plans and specifications on which contract was let and other instruments, but alleged that such instruments were too voluminous to be made part thereof and that they were filed with court as exhibits to petition, all instruments so filed were thereby made part of petition as completely as if actually copied therein in hæc verba, and the conditions, stipulations, and burdens of the contract acknowledged as part of pleader's cause of action.

2. Municipal corporations ⬦374(1)—Contractor held not entitled to recover for breach because of encountering submerged logs not disclosed by city's blueprints.

Where written contract for construction on city wharves, including driving of piles and dredging, provided that bidders should inspect site and inform themselves of local conditions, and that all losses arising from unforeseen circumstances or unusual obstructions or difficulties should be borne by contractor, held that contractor was not entitled to recover for breach of contract by city because of encountering large number of submerged logs imbedded in bottom of river at place where long-abandoned sawmill had been located, notwithstanding city's blueprints and plans did not disclose obstruction.

3. Evidence ⬦5(2)—It is common knowledge that logs are necessary for sawmills and that submerged logs may be found at site of old sawmill.

It is common knowledge that sawmill logs are necessary for sawmills and that submerged logs will probably be found at site of old sawmill.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Action by Ike L. Hill, Trustee of the Houston Construction Company, against the City of Beaumont. Judgment for defendant, and plaintiff appeals. Affirmed.

Howth, Adams & Hart and Holland & Cousins, all of Beaumont, for appellant.

J. B. Morris, F. M. Sheffield, and W. S. Nichols, all of Beaumont, for appellee.

WALKER, J. [1] This was a suit by appellant, as trustee of the Houston Construction Company, against appellee, the city of Beaumont, for damages for breach of contract. The appeal is from the judgment of the trial court sustaining a general demurrer to plaintiff's petition. After alleging his right as trustee to prosecute the suit, the letting of the contract on competitive bids, the due execution of the contract between appellee and the Houston Construction Company for about $300,000 worth of work, consisting of work on the city wharves, such as driving piling, filling behind the piling, dredging, etc., and the giving the details of the things to be done by the Houston Construction Company in the proper execution of the contract, its good faith, and its attempt to execute the contract, the pleader then stated the grounds constituting the breach, and, assuming that such grounds were actionable, duly and sufficiently pleaded the resulting damages and facts showing that the damages resulted proximately from the alleged breach. The damages claimed were in excess of $100,000. The petition did not include, by copying therein, the plans and specifications upon which the contract was let, the blueprints, the information to bidders, and the contract between the city and the Houston Construction Company, but it was alleged that these exhibits were too voluminous to be made parts of the petition, and therefore the pleader was filing them with the court as exhibits to his petition. This was in fact done, and all these instruments were, by proper allegations, referred to and included in and made parts of the petition as completely and fully as if actually copied therein in hæc verba, and the conditions, stipulations, and burdens of the contract acknowledged as part of the pleader's cause of action. The originals of all these papers were sent up by the trial court as

---

parts of the transcript, to be considered by us in construing the petition as against the general demurrer. It was alleged that the contract was to be executed under the direction of the city engineer. As constituting the breach appellant alleged:

"The defendant furnished to bidders and to the Houston Construction Company blueprints, plans, and profiles of the work to be done under said contract made by said city and its engineers and servants, which purported to be and were complete in every detail. That the same showed the ground line of the river where the piling and foundation was to be driven for the portion of the municipal wharf covered by said contract and dock and constituted and was a representation by the defendant to bidders, including the Houston Construction Company, as to said ground line and the nature and character thereof from the ground line to the clay deposits thereunder, showing from the surface of the river water the full depth to which all piling was to be driven, and showing the nature of the substances through which said and all of the pilings were to be driven, and same showed a strata or layer of sand approximately 28 feet deep immediately below the water in said river beneath which was shown the clay deposits at a depth of approximately 43 feet from the water line, the same showing a layer of sand beginning at the bottom of the river, extending to the strata of clay a distance of approximately 28 feet, which was to be partially removed and used in other portions of the work, and below which was shown a strata of clay into which the piling was to be driven and rest. That the information so furnished bidders and the Houston Construction Company in regard to the conditions in the bed of the river was as stated, and the same showed no obstacles or impediments to be driving of piling of any character, and showed that the piling to be driven would pass through only silt or sand for the distance shown in said blueprints, plans, and specifications, and thence into clay for the remaining distance to which the same were to be driven under the terms of said contract.

"The Houston Construction Company, after it had been awarded said contract, had entered into the same, had furnished the bond, which had been accepted by the city, and had been notified by the city that all requirements had been complied with by the city for the commencement and completion of said work, and, being instructed by the city to commence the performance of said contract, did enter upon its performance, and after doing a considerable portion of said work, assembling its plans and equipment, and going to a large expense in the performance of said work and in driving the piling required by said contract, it was discovered by the Houston Construction Company for the first time that the representations made to it by the city as to the condition of the bed of said river through which the piling was to be driven and substances through which it was to pass were not true and did not correctly represent the facts, but that, on the contrary, beneath the surface of said river and beneath the surface of the silt or sand there was imbedded and entangled a large number of logs apparently sunken logs resting and accumulating at the bottom of said river for many years prior to the making of this contract, the result of sawmill operations conducted at or about said place for years prior to the making of the contract hereinbefore referred to. That upon encountering said sunken logs the Houston Construction Company, being wholly unaware of their presence, and being unable to drive piling through the same to the depth required by the contract given, made report of conditions to the defendant city and all of its authorized agents and representatives, including the engineer in charge of said work.

"That the engineer placed by the city in charge of said work, and under whose orders by said contract the Houston Construction Company had been placed, was wholly incompetent, and in all matters connected with said contract acted toward the Houston Construction Company in bad faith, and did not have sufficient learning, experience, skill, and judgment properly to direct or perform the work being done, and said engineer, in dealing with the Houston Construction Company in regard to the situation so found and discovered by it, based his view on a wrong conception of the contract and acted fraudulently and was so hedged about and restrained in his actions by the city so that he could not freely exercise his judgment, and acted and directed the work and its performance in all matters, regardless of whether it concerned matters not properly to be submitted to him or not, and the Houston Construction Company was compelled to act under the direction of said engineer and do all things required by him, and he had full authority from the city to do and perform the things he did do, and by reason of said representations being untrue and by reason of the bad faith of said engineer and his wrongdoing, as hereinafter shown, the Houston Construction Company was compelled to do, and did do, to meet the requirements of said engineer, labor and work not contemplated by said contract, not necessary and not called for by the plans and specifications, and because of which they were greatly damaged, as hereinafter shown.

"At driving the piling required by the contract, when the bottom end of same struck a sunken log imbedded below the surface of the river and below the earth and earthen deposits in the bed of the river, said logs so sunken were sound, and it was impossible, from an engineering standpoint, and as a matter of fact, to successfully drive said piling through said sunken logs; but as a matter of fact said sunken logs formed and were a fixed, safe, and secure foundation upon which said piling could rest, and should have been permitted to rest, and it was not in the interest of good construction to drive, or attempt to drive, said piling deeper, but the city engineer, and those acting with him and for the city, and the agents and officers of the defendant city, acting in bad faith and not acting in good faith and with deliberate intent to injure the Houston Construction Company and cause it loss and damage, required long and continuous driving on said piling, and each of them, to such an extent that the bottom of said pilings would become spread out, broomed, or mushroomed, and the steel base of the hammer of the pile driver would become superheated and crystalized causing it to break and causing other portions of the hammer to break, requiring continuous replacements and delays, and entailing large and continuous expense for labor, all of which was required and done at an

unnecessary, unreasonable and additional cost to the Houston Construction Company of $14,-720.45, additional supplies and tackle amounting to $8,543.39, an itemized list of which is shown by Exhibit A attached to plaintiff's petition filed herein March 7, 1927, as well as Exhibits A-1, 2, 3, 4, 5, and 6 so attached, which are here referred to and made a part hereof for specific description of each item of expense and charge so caused and incurred because of the wrongs herein recited.

"The Houston Construction Company, before entering into said contract, inquired of the representatives of the city as to the condition of the ground below the water line and as to whether or not bearings and soundings had been made to truly represent said condition, and in addition to the representation in regard thereto as contained in the drawings and specifications and plans the Houston Construction Company was assured that conditions were truly represented thereon and that sufficient and proper soundings and bearings had been made, and that conditions below the water line were as represented in said contract, and the Houston Construction Company were never advised to the contrary until in its operations it encountered said obstacles and became aware of said untrue representations, and were only advised thereof at said time and during its performance of said contract as the same were encountered, and it had no means of foreseeing said obstacles or believing to the contrary of the representations made to it, and if the defendant knew of said conditions as existed in truth and in fact, the same were deliberately concealed from bidders by the defendant, including the Houston Construction Company, and never referred to them."

It was further alleged that the filling behind the piling was to be made from the sand in the bed of the river adjacent to the work, but because of the trash and logs and sticks found in this sand it could not be used for that purpose; and the extra cost of this work was charged as an element of the breach. The petition is very lengthy, covering 21 pages of the transcript, but the statement as made sufficiently reflects the nature of the cause of action asserted. It was not alleged that appellee actually knew of the presence of the logs at the site of the work, nor that it was guilty of actionable negligence in not finding them. The blueprint, as exhibited to the Houston Construction Company and other bidders, did not purport to show borings on all the work, but only a very small section. The city of Beaumont operates under a home rule charter, requiring the courts to take judicial notice of all its provisions. The charter creates a board of dock and wharf commissioners, giving them exclusive control and management of the docks and wharves of the city. Under this provision of the charter, appellee advances the following proposition in support of the general demurrer:

"Where the home rule charter of a city creates a board of dock and wharf commissioners, giving them exclusive control and management of the docks and wharves of the city, the cause of action arising out of the operation or construction of the docks and wharves must be brought against the board of commissioners, and no action lies against the city."

Subsection 31 of section 70 of the Charter of the City of Beaumont provides:

"Before the city of Beaumont shall be liable for damages of any kind, the person injured, or whose property is damaged, or some one in his behalf, shall file with the city commission a notice in writing of such injury within sixty days after the same has been received, stating specifically in such notice when, where, and how the injury occurred and the extent thereof, and the names and addresses of any person or persons, if any, witnessing the same, if such names and addresses can be ascertained by reasonable diligence."

Under this section, appellee advances the following proposition in support of the general demurrer:

"A petition alleging a tort against a city is subject to general demurrer where it does not affirmatively allege the giving of notice of the injuries, as required by the city charter."

Subsection 7 of section 65 of the Charter provides:

"Neither the commission nor any employee, nor the board shall have authority to make any contract involving the expenditure of public money or impose upon the city any liability to pay money unless and until a definite amount of money shall have been appropriated for the liquidation of all pecuniary liability of the city under such contract or in consequence thereof to mature during the period covered by the appropriation. Such contract shall be ab initio void as to the city for any other or further liability."

Under this provision of the charter, appellee advances the following proposition in aid of the general demurrer:

"Where a city charter provides that the city shall have no authority to make any contract involving the expenditure of money or impose upon the city any liability to pay money unless and until a definite amount of money shall have been appropriated for the liquidation of all pecuniary liability of the city under such contract, or in consequence thereof to mature during the period covered by the appropriation; and providing further that such contract shall be ab initio void to the city, a petition based upon a contract with the city is subject to general demurrer unless it affirmatively alleges an appropriation by the city commission to pay the obligation imposed by the contract."

[2, 3] The plaintiff did not allege a compliance with these charter provisions. Appellee's fifth proposition is that the cause of action was barred under the statute of two years' limitation, and the sixth proposition that it was barred under the four years' statute of limitation. The contract was dated May 11, 1923, and the original petition filed May 7, 1927. We have given appellee's propo-

sitions 2 to 6, inclusive, in order that a full statement of the case may be reflected by the opinion, but pretermit a discussion of them, since in our judgment the first counter proposition advanced fully sustains the judgment of the court on the general demurrer. This proposition is as follows:

"Where the written contract sued upon contains clear provisions which absolutely preclude the plaintiff from recovering upon the matters alleged in his petition, it is not error for the trial court to sustain a general demurrer thereto."

The written contract contains the following provisions, among others:

(a) "Bidders are expected to inspect the site of the work and to inform themselves regarding all local conditions."

(b) "All loss or damage arising out of the nature of the work to be done, or from the action of the elements, or from any unforeseen circumstances in the prosecution of the same, or from unusual obstructions or difficulties which may be encountered in the prosecution of the work shall be sustained and borne by the contractor at his own cost and expense."

Appellant pleaded these conditions as a part of his cause of action, and alleged that the Houston Construction Company was under the duty of discharging all the burdens of the contract. Under condition (a) the Houston Construction Company was required to inspect the site of the work and to inform itself regarding all local conditions. The troubles encountered by it in the execution of the work arose from a local condition of which it could have been fully advised on inquiry. It was pleaded that the site was the seat of an old sawmill. This could have been discovered by inquiry. It is a matter of common knowledge that sawmill logs are necessary for sawmills, and that everything found at the site of the work constituting the alleged hindrances and obstructions to the execution of the work inherently exist at the site of an old sawmill. Inquiry by the Houston Construction Company, under the terms of the contract, would have so informed it, and it was therefore required to take notice of the very conditions now complained of. Section (b), as given above, also protects appellee fully from liability. If appellant was not required to take notice of these conditions under section (a), and if the borings as actually made did not reveal the sunken logs, then their presence at the site of the work was an "unforeseen circumstance in the prosecution of the same" or constituted unusual obstructions or circumstances encountered in the prosecution of the work. Therefore, by said section (b), these logs were a burden on the Houston Construction Company expressly assumed by the conditions of the contract as fully as if reflected by the plans and specifications. The plans and specifications detailed the depth to which the piling was to

5 S.W.(2d)—38

be driven, and the Houston Construction Company contracted to drive the piling to that depth, notwithstanding the "unusual obstructions or difficulties" which it might encounter in the prosecution of the work. That the city engineer required the Houston Construction Company to comply with this condition of the contract did not constitute bad faith on his part, nor a breach of the contract. All other damages claimed proximately resulted from the conditions just discussed, and therefore, under the quoted clause of the contract, did not constitute a liability against appellee. The general demurrer was properly sustained.

It follows that the judgment of the trial court sustaining the general demurrer must be and the same is hereby affirmed.

### On Rehearing.

Appellant charges that we have gone outside of the reasonable intendments of his petition and indulged in findings of fact wherein, on the allegations of his petition, we say that it could have been discovered and was the duty of the contractor to discover that the situs of the work was the site of an old sawmill; that the obstructions to the work as found inherently exist at the site of an old sawmill; that the contractor was required to take notice of the very conditions upon which his cause of action was based; and—

### "Tenth Ground of Error.

"The court erred in holding that the blueprint, as exhibited to the Houston Construction Company and other bidders, did not purport to show borings on all the work, but only a very small section, because said finding and holding is an express finding of fact, contrary to the true facts, in that it would be shown by the testimony in this case that the plans and blueprint exhibited and upon which the contract was founded was an express representation as to the condition of all of the work, and not only a very small section thereof, but made and exhibited as a fair illustration and correct delineation of the conditions at the point the work was to be carried on, fully revealing to prospective bidders said conditions as applied to all the work to be done and not limited to any section thereof."

In further explanation of this assignment, appellant says:

"The blueprint did not purport to show borings at all; there is no indication on it of any borings ever having been made; there is no occasion for such a showing; it does not show borings anywhere; it does not attempt to show borings. It was not made for the purpose of showing borings; whether borings had been made or not was wholly immaterial, and the fact that they were made was not a thing to be considered by the contractor, and this blueprint does not purport to show borings on any portion of the work."

It was not our intention to indulge in findings of fact. We tried, on a careful review

of appellant's petition and the original contract and blueprints filed by him as exhibits, to ascertain the conditions upon which the work was to be performed. Since the filing of our original opinion we have examined the blueprint with counsel for appellant in an effort to determine its meaning. It shows what counsel calls and what is denominated on the blueprint "an average section." This purports to show six pilings, as appellant says, and six borings, as we said, extending from the top of the work to be done down through the water and sand and resting in clay. At the earnest insistence of appellant we modify our description of this section of the blueprint denominated by us as "borings" and let them be what they may, saying, however, in connection therewith, that it is reflected on the blueprints that the pilings or the borings extend from the top of the work to be done through water, sand, and clay, with no showing of any obstruction whatever. In all the things that appellant calls to our attention by his propositions on this rehearing, we were trying to say that under the allegations of his petition appellee had not been guilty of any actionable wrong, and that the obstructions as actually found in the progress of the work were anticipated by appellee and contracted against by section (b) given in our original opinion, as follows:

"All loss or damage arising out of the nature of the work to be done, or from the action of the elements, or from any unforeseen circumstances in the prosecution of the same, or from unusual obstructions or difficulties which may be encountered in the prosecution of the work shall be sustained and borne by the *contractor* at his own cost and expense."

We based our conclusions on the allegations of appellant's petition, aided and construed in the light of the exhibits filed by him as a part of his cause of action. Appellee submitted to the bidders on its work a form of contract with plans and specifications and blueprints showing in detail the work to be done. It was alleged by appellant that borings had been made at the site of the work, and that these borings showed water, sand, and clay as the substances through which the piling was to be driven. It was not alleged that borings had been made on all the work, and certainly there is no statement in the contract that the borings made and the representations upon which the contract was let showed the conditions that would be found upon all sections of the work. But the allegations of appellant's petition show nothing more than a disclosure of the facts found by appellee in the borings as made, and to guard against unforeseen obstacles, appellee protected itself by section (b), supra. If section (b), which is a part of appellant's petition and a burden assumed by him, does not bear the construction we place

upon it, it seems to us it has no office in the contract. As we again review appellant's petition in the light of his exhibits, we think it means this and nothing more: That appellee had work to be done. It made borings upon which to base its plans and specifications. Not having examined all sections of the work for obstructions, it and the contractor anticipated the very conditions upon which this suit was filed by the provisions of section (b). Therefore, having made section (b) a part of his petition, and section (b) being an insurmountable obstacle against recovery, a general demurrer was properly sustained.

The motion for rehearing is overruled.